Mr. Moore, when you are prepared, please proceed. Thank you. May I please have the floor? My name is Blade Moore. I represent Justin Davis in this case. I know you're familiar with our briefs. I won't rehash all of it, but I would say there was definitely insufficient evidence to convict. And the issue with the jury verdict kind of form illustrates that fact. The government did a very good job in this case of proving that a robbery took place at that church's chicken back in 2013. However, they were unable to prove the element of identity of Mr. Davis being involved in that. We feel the jury noticed that fact, and that's illustrated in their questions that they asked of the court while they were deliberating. They specifically asked about whether or not aiding and abetting was something they could find as well. What's our review standard for this issue on this record? Is it de novo or is this on plain error? De novo on that. They inquired both about the aiding and abetting fact, but also about whether or not, in relation to the firearm, if they had to find all the elements, use, brandishing, discharging, or if they could find one of those items. That was answered by the court, went back, and ultimately found him guilty of both. However, in the jury verdict form, specifically on the firearm, they were to select. They wrote guilty out, and they were to select whether or not he discharged, whether or not he brandished, and they actually selected that he neither discharged nor brandished. So what are we to take away from that? I mean, what's the legal impact of that? That there was confusion, and they were trying to, it's incongruous to find that Mr. Davis neither. I see. So there may have been confusion, but if we review de novo, we also defer to the jury's verdict, right? And the verdict form reflects, arguably, a resolution of the jury's confusion. Why isn't there, when you put together the gun, the arguably inconsistent statement, or a statement that the jury could infer was inconsistent, the location, the testimony about the sweatshirt? At some point, how much is necessary here, and why is the government short? That's a good question. Well, so the evidence is very clear from the trial, from several different witnesses. Two men entered, both of them possessing firearms. One of those firearms was discharged. The two men that went into that church's chicken brandished firearms, by the Eighth Circuit's definition. It displayed for the purpose of intimidation. One of them was discharged. So Mr. Davis could not have been one of those two men, because the jury found that he neither brandished nor discharged a firearm. There's no way that the government could prove both that he was one of those two men, but also did not do one of the requisite requirements. Wasn't he charged with aiding and abetting? On which, Your Honor? On the robbery. On the robbery, yes, Your Honor. And that's what they ultimately, it seems that they found, based off of that. However, the two men that went in did brandish firearms. One of them did discharge. If you were to show that the aiding and abetting for the purpose of the 924-C, you would have to show some evidence of the planning stage. Suppose, for example, you were saying that they believed that Mr. Davis was involved in planning this robbery, but maybe was not one of those two men. But wasn't there evidence that he may have had a part in supplying the weapon? Unclear. So the DNA, he came back as a major contributor, with DNA being on the firearm that was there. It is unclear if that was direct, indirect DNA transfer. It was unclear at what point in time that DNA was placed on there. But if that's the case, if he may have provided the firearm that was used there, you would have to show, the government would have to show some evidence that they knew that that firearm was going to be used, displayed, brandished. And there was no evidence at trial about any sort of planning stages or to whom he would have given that or whether or not Mr. Davis would have that requisite knowledge. I think that's the Roseman case from 2014, Supreme Court, talking about having to know, not necessarily accurately engage in the use or the brandishing or the discharging, but having to know that it could be. And there was no evidence of any sort of planning stages. As far as the hoodie, that was, I believe even the trial court noted, outside the presence of the jury, that they didn't see anything unique whatsoever about the hoodie that was within the video. The direction that the two suspects left in was merely north towards a major thoroughfare. That is not indicative of being involved in Mr. Davis. He happened to live north of where the restaurant was located. Neither any of the witnesses nor any of the surveillance footage showed them going directly to his house. It was merely north towards that major thoroughfare. And I don't think it's a point of accumulation as far as so much evidence would give way to it and the fact that they never did prove that identity. They never proved that he was one of those two men. They never proved that he had embedded those two men and was not directly involved with them. I think that the crux of our argument is that there was insufficient evidence, whether he was one of those two men or somebody that helped provide the firearm that ultimately was used during that robbery. If you have no more questions, I will reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Moore. Mr. Davis. May it please the Court, my name is Justin Davis. I'm an assistant U.S. attorney for the Western District of Missouri, and I represent the Appellee of the United States of America. Good morning. To quickly touch on a couple of points raised by counsel, insufficient evidence is really a different issue than its inconsistent verdicts here. When we're looking at whether there was sufficient evidence, we're looking at whether there was. . . Counsel, could you speak up a little bit more? Oh, I apologize. I'll get the microphone closer to you. When we're looking at sufficient evidence, we're really looking at whether the evidence supports the elements of the offense. Whether there were allegedly inconsistent verdicts, though, that doesn't really go to whether there was sufficient evidence. That really goes to resolving conflicts in the evidence. And while we're under a de novo stand. . . Doesn't there need to be sufficient evidence that the person who's charged with the robbery actually committed it? Yes, there does, Your Honor. But here we have a robbery involving two people, both with guns. One was the lookout, and one was the person that went up to the counter and fired the gun, and the gun exploded. Here there was sufficient evidence that one of the robbers was the defendant. We had the DNA on the gun. The DNA was, I think, like one in five quintillion, which evidence at the trial was that there are fewer people in the world than that number. I would posit that there have been fewer people alive in the entirety of the earth than that number. There was testimony about the hoodies. There was testimony about the nearness of the defendant's house. What was the testimony about the hoodies, though? I mean, that was pretty thin, wasn't it? You know, Your Honor, it . . . He's wearing a Mizzou sweatshirt. Sure. Wasn't there some ambiguity in the testimony, too, about allegations? Well, his sweatshirt has a stain on it. I mean, it's been a couple days since I've looked at that. But I suppose your argument is, fine, that was up to the jury to weigh that testimony. It is, and we're not arguing that that is the linchpin, that someone could be guilty just because of the sweatshirt. We're arguing . . . Well, certainly you can't argue that someone's guilty because they live nearby the location either, right? I mean, that's the problem here. Several of these elements of evidence . . . When we take each piece of evidence by itself, of course that likely doesn't prove a defendant guilty in any case. But it's the accumulation of this evidence that then a jury can weigh and determine . . . So am I missing anything? We have the DNA. We have the statement, the defendant's own statement. Right. We have the clothing, the hoodie or the sweatshirt. We have the location and the departure direction of the two defendants. Is that the sum total? And we have the video showing them. Which I've looked at, I guess is the argument you were going to make before I interrupted that the jury could have said, hey, that looks kind of like him. I mean, he was in court. He was representing himself. They had plenty of familiarity with him. Right, right. And . . . I certainly couldn't identify . . . No, I'm not saying you can identify him from that. But what you can see, and is if you can take a . . . The government also submitted into evidence this map showing the location. And we included that in our appendix. And if you look at that video, that surveillance video, it's not just showing the defendant running out of the Church's Chicken and towards Longview Road. You can actually see the defendants running, and they're going towards this wooded area by this railroad track between this other building and Bennington Avenue. And that's where they then disappear into. And that's straight up the street to Bennington Avenue toward that house. It's not that he just ran towards a major thoroughfare. They crossed the major thoroughfare and kept running up the right side there of Bennington Avenue. I'd also note that one of these things about his statement . . . Obviously, we have the date change when he says, oh, yeah, I touched a gun sort of like that five months prior. And the officer's like, well, this actually occurred in December, which you're saying January, which is five months. He's like, okay, all right. It was no count, right? And what's the inference the jury can make from that in your view? Well, the defendant is trying to establish that he touched a gun, and that would explain why it was on there. And if he's touching the gun after the robbery, that doesn't help explain how his DNA got on the gun at the robbery. So he has to move that statement back. He also talks about . . . So is he . . . just to play with that a little, is the inference that he's not truthful, or is the inference something more than that? It's more than that, Your Honor. It's . . . he is not being truthful because he is trying to distance his . . . So is it a consciousness of guilt? Yes. Sort of cover up? Yes. And the jury could take that into consideration. I'll say that the jury could also take into consideration there was testimony that the defendant had this friend, TK, and that they had been friends for a long time. And then in his interview, he talks about TK as if it's someone that he had just met, right, that he had just met out on the street. Is there any other . . . I don't recall where TK comes . . . Is there any other evidence about TK in the case? Yeah, yeah. The witness that testified about the hoodie, they were long-time friends. And so he also talked about this Torrance Keys, I believe his name was. And his name was . . . he went by the nickname TK. So in this interview, he talks about, oh, the gun belonged to TK. I touched it. I don't really know. You could tell from the interview that he's acting like he doesn't really know who this TK is. It's just someone he met out on Independence Avenue. I don't remember this. Was this videotaped? Yes, it was videotaped. Okay, okay. I'll have to watch that. We included the transcript in our appendix, but it was also videotaped. The jury watched the video? Yes. And also, and this isn't in the briefing, but it is . . . He testified that this occurred on Independence Avenue. Independence Avenue is a significant distance from where this robbery occurred. So the jury . . . And even though there wasn't necessarily testimony about Independence Avenue itself, the jury comes in with their own knowledge. Independence Avenue is a well-known crime area in Kansas City. What's your theory of why the jury didn't find him guilty of brandishing? Well, my theory is this, is that in closing, the government essentially argued that the jury didn't need to find which particular person was the defendant. They just needed to find he was one of the people that participated in the robbery. Right? That's essentially an alternate theory. And my theory is that either the jury . . . There was some compromise or whatever. This is one of the reasons why we have this differential standard. We don't know what is going through the jury's mind. My theory is that they may have considered that he was the lookout. That he was the other person with the gun. And because he wasn't the one that shot it, they didn't find that he was the one that brandished. Now, I agree that could have been brandishing. But the jury didn't. And I don't know that we can second-guess the jury on that. It certainly does not lend to the . . . He wasn't handling the gun. I think by their verdict, they agreed that he . . . Verdict on the 924C charge, he used the gun in connection with the robbery. For some reason, they didn't consider that brandishing. And that's the verdict that the government has to live with. What was the conduct that enabled them to conclude that he aided and abetted? Well, I think if you think . . . First of all, they didn't have to find that he aided and abetted. Aiding and abetting is a . . . You don't have to charge it. It's simply a theory of liability. It's included in every criminal charge. They did not have to find that. They possibly could have found it if they felt that as the lookout, he was aiding and abetting the person doing the actual robbery. Again, I think that by being the lookout, he is actually committing the robbery. But again, this is why we have the standard of review. We can't get into the mindset of the jury when they are the ones resolving these conflicts. If there are no other questions, the government respectfully asks that this court uphold the jury's verdict and affirm the defendant's conviction. Thank you. Thank you, Mr. Davids. Thank you, Your Honor. Just briefly, I agree that the four prongs that they seem to hang their hat on is the DNA, the hoodie, the residence, and the statement. As far as the statement goes, there was nothing nefarious about the way he answered the questions. He admitted to knowing this TK. He admitted to the possibility that he had touched this firearm. Well, the changing of the date, though, couldn't the jury draw a negative inference or an inference against your client based on that? There may be an innocent explanation. There may be an inculpatory explanation for that interview, too. Now, why isn't that entirely within the jury's purview, and why isn't that, along with the DNA on the gun, enough, setting aside the other evidence, to push this over what's a very low bar on review? Of course. I think it's very obvious that any sort of police interrogation is going to be stressful. It was not that he was- All of which could have and may have been argued to the jury. I think the defendant represented himself, so it may well not have been, but all of which is fair game.  But even some of the witnesses they heard, the crime scene analyst that reviewed the video, said that both men were wearing gloves, and then later when asked about it, no, no, there was no glove on the right hand. One of the prosecutors in trial mentioned the fact that they didn't have a gun. Oh, wait, they did. Mistakes are made constantly when a slip of the tongue, things of that nature. Certainly the jury could have inferred something negative, but I think to show that he was not being truthful throughout his statement would be incorrect. The hoodie is so inconsequential. The judge referenced that there was nothing out of tune. A Mizzou sweatshirt in Kansas City is very obvious. And in fact, the evidence was not that Mr. Davis owned that sweatshirt. The witness that testified said they had seen a sweatshirt like it at the home in which he had been, many other people had been. It was not necessarily connected to Mr. Davis that way. The DNA- How about the departure? Your colleague for the government mentioned that it was more than him heading north. It was him heading into an area that was maybe more reasonably located near the defendant's residence. Do you view it the same way as far as his description of what the evidence showed? No. From the video you all watched, you can see they head in that direction. There is a wooded area there. I would posit, though, that two people that had just committed a crime of this nature are probably not going to be just running down the street. They would probably look for a place undercover. A wooded area like that would be. The courthouse where this took place also was due north of the location of this church ticket. I don't think that's where they were heading either. You should argue the case. What I'm struggling with is all good arguments. I'm wondering if those were just arguments for the jury. Again, they may have taken all this into consideration, but it boggles the mind how you can find that Mr. Davis was one of those two individuals and yet he did not brandish nor discharge a firearm. That's incongruous. I struggle with how.  Say again? What about display? Display? The statute 924C also includes display, but that's not one of the options on the jury's verdict form. You're absolutely right. Maybe the jury felt like he displayed the firearm. Displaying that firearm would still fall under the brandishing, displaying for the purpose of intimidation a lookout that was also there when a gun is being discharged. I think that would fall under that same umbrella in which you would have to display for that purpose as opposed to another purpose. Two robbers entering a building, both of them holding out firearms. I think that would go more to this definition of brandish than display. I'm out of time. Thank you very much. We're just asking that you would reverse. Thank you, Mr. Moore. The court notes that you're representing your client today under the Criminal Justice Act and we wish to express our appreciation for your willingness to serve in that capacity. Thank you. Madam Clerk, does that complete our scheduled arguments for this morning? Yes, it does, Your Honor. That being the case, we'll be in recess.